**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DAMIEN RIVERO, Plaintiff, vs. JACKIE CRAWFORD, ET AL., Defendants. | CV-N-04-0495-HDM (VPC) <br> **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** <br> August 16, 2006 |

This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#67). Plaintiff opposed (#71), filed a supplemental opposition (#75), and a second supplemental opposition (#80).

The court has thoroughly reviewed the record and the motion and recommends that the motion be granted in part and denied in part.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Damien Rivero is a prisoner at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#8). Plaintiff brings this complaint pursuant to 42 U.S.C. § 1983, alleging prison officials violated his First Amendment rights to be free from retaliation and to access the courts, his Eighth Amendment right against cruel and unusual punishment and his Fourteenth Amendment right to due process. *Id*. Plaintiff names as defendants Jackie Crawford, NDOC director; E.K. McDaniel, ESP warden; D.W. Neven,

associate warden of operations; Jack Garchow, correctional officer; Walter Romero, senior Corrections Emergency Response Team ("CERT") officer; Chad Oxborrow, CERT officer; Jeffrey E. Eldridge, CERT officer; Richard D. Falge, lieutenant; and Martin Neagle, lieutenant.[1] *Id*.

In count I, plaintiff alleges that prison officials violated his Eighth Amendment right against cruel and unusual punishment by formulating policies authorizing the use of force on restrained inmates. *Id*. Plaintiff also claims that while he was in restraints, defendant Garchow slammed plaintiff to the ground, repeatedly slammed his head on the ground, punched plaintiff with a closed fist and, along with other officers, jumped on plaintiff's back. *Id*. Plaintiff claims he suffered injuries to his face and lower back. *Id*.

In count II, plaintiff alleges that defendants violated his Fourteenth Amendment right to due process. *Id*. Plaintiff claims that Garchow filed a false disciplinary report in May 2004. *Id*. Plaintiff contends that officials held a disciplinary hearing and found that he had made threats and behaved in a disruptive manner, despite a lack of evidence. *Id*. Plaintiff also claims that defendant Neagle violated plaintiff's due process rights when, pursuant to a disciplinary hearing, Neagle found that plaintiff had intentionally damaged the light in his cell. *Id*. Plaintiff apparently argues that he did not damage the light. *Id*. Plaintiff states that he filed grievances requesting that prison officials photograph the light for the disciplinary hearing, but no photos were taken. *Id*.

[1]Plaintiff filed his original complaint on December 10, 2004 (#5). The court dismissed several claims for insufficiency (#3). Plaintiff filed his amended complaint on April 20, 2005 (#8). Plaintiff moved for a preliminary injunction on August 11, 2005, which the Court denied (#s 44, 51).

In count III, plaintiff claims that prison staff violated his First Amendment rights to petition for redress of grievances by submitting false disciplinary reports to retaliate against plaintiff for grievances he filed. *Id*. Plaintiff also alleges that in May 2004, prison staff searched his cell and falsely reported that they discovered a razor blade. *Id*. Plaintiff argues that they planted the blade in retaliation for grievances plaintiff filed requesting that all cell searches be videotaped. *Id*. Finally, plaintiff claims that defendants Romero, Oxborrow and Eldridge tore up plaintiff's legal documents under the pretext of removing staples in order to prevent plaintiff from litigating his legal claims. *Id*.

Defendants move for summary judgment (#67-1).

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Summary judgment

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). In deciding whether to grant summary judgment, the court must view the evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue,

however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Only evidence which might be admissible at trial may be considered by the court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Evidence without a proper foundation cannot support a motion for summary judgment. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).

Material facts are facts that might affect the outcome of the case; the court determines materiality by reference to the substantive law that controls the case. *Anderson*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. *Id*. If, given the evidence submitted, a reasonable jury could hold for the nonmoving party, the dispute over material fact is "genuine." *Id*. Where there is a complete failure of proof on an essential element of the case for the nonmoving party, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**2. Excessive force**

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency."

*Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted); *see also Hutto v. Finney*, 437 U.S. 678, 685 (1978); *Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979). When an inmate alleges that a prison officer used excessive physical force in violation of the Eighth Amendment "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Jeffers v. Gomez*, 267 F.3d 895, 899 (9th Cir. 2001).

Where prison officials have acted in response to an immediate disciplinary need, because of the risk of injury to inmates and prison employees and because prison officials will not have time to reflect on the nature of their actions, the "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard, applies. *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *Jordan v. Gardner*, 986 F.2d. 1521, 1528 (9th Cir. 1993) (en banc). Because the use of force relates to the prison official's legitimate interest in maintaining security and order, the court must be deferential when reviewing the necessity of using force. *See Whitley*, 475 U.S. at 321-22. *But see McRorie v. Shimonda*, 795 F.2d 780, 784 (9th Cir. 1986) (describing circumstances in which the prison official's use of force was unconstitutionally excessive).

In order to determine whether the force was excessive, the court looks to the "extent of injury . . . the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7, quoting *Whitley*, 475 U.S. at 321.

**3. Retaliation**

"[T]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974). Prison officials may be sued under § 1983 for retaliating against a prisoner for exercising his or her constitutional rights. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9thCir. 2003). To establish a prima facie case of retaliation under § 1983, the inmate-plaintiff must allege: (1) that he was retaliated against for exercising a constitutional right, and (2) that the alleged retaliatory action did not advance legitimate penological goals, such as preserving order and discipline. *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (*per curiam*). Such claims must be evaluated in light of the deference that must be accorded to prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). The prisoner must submit evidence to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Id*. The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id*. at 806. Finally, the inmate must demonstrate that the defendants' actions caused him actual injury. *See Resnick v. Hayes*, 213 F.3d 443, 439 (9th Cir. 2000).

**4. Due process**

The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally-protected liberty interest is at stake. *See Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1995). Liberty interests can arise both from the Constitution and from state law. *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). When deciding whether the Constitution itself protects an alleged liberty interest of a prisoner, the court should consider whether the practice or sanction in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974); *Neal v. Shimoda*, 131 F.3d 818, 830-31 (9th Cir. 1997). Prison officials must make individualized determinations to limit the calling of witnesses, *see Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996), and must eventually explain their reasons for so limiting the prisoner's ability to defend her or himself, *see Ponte v. Real*, 471 U.S. 491, 497 (1985).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Toussaint v. McCarthy*, 926 F.2d 800, 802-03 (9th Cir. 1991). Prisoners have no automatic right to counsel in prison disciplinary hearings, but if the inmate is illiterate, the issues are complex, or the prisoner is unable to gather evidence, the prisoner must be provided with some legal assistance. *See Vitek v. Jones*, 445 U.S. 480, 495-96 (1980).

**B. Analysis**

**1. Excessive force**

First, defendants argue that no NDOC policy exists that allows correctional staff to "slam" inmates to the ground (#67-1). Defendants provide the institutional procedures governing use of force as well as the protocol for handling High Risk Potential ("HRP") inmates (#65, Ex. A, B, submitted under seal). They also provide responses to interrogatories by defendants Crawford, McDaniel, and Neven (#67, Ex. C, D, E). Plaintiff offers only his own bare assertion that such

policy exists (#s 71, 75, 80).

Nothing in the ESP institutional procedures indicates that a policy exists that permits prison staff to "slam" inmates to the ground, whether or not the inmates are restrained. In their responses to interrogatories, Warden McDaniel and Associate Warden of Programs Neven state that staff is not trained to slam inmates to the ground and that staff is trained to use only the amount of force necessary to restore order and prevent injury to staff or inmates (#67, Ex. D, E). Plaintiff offers no evidence to support his claim, other than his own conclusory affidavit. Accordingly, defendants' motion for summary judgment is granted as to plaintiff's claim that a policy exists that allows prison staff to slam inmates to the ground.

Second, defendants argue that Garchow did not use excessive force against plaintiff (#67). Defendants contend that Garchow was required to use force when plaintiff suddenly lunged at him, that Garchow used an appropriate amount of force to place plaintiff on the ground, that Garchow reasonably perceived a threat, that he did not have time to temper the severity of the force, and that plaintiff suffered only *de minimus* injuries. *Id.*; *Hudson*, 503 U.S. at 7, quoting *Whitley*, 475 U.S. at 321. Defendants provide affidavits of Garchow and the other two officers that were escorting plaintiff when the incident occurred (#67, Ex. H, J, K). Defendants also include Garchow's responses to interrogatories, the medical report on the incident, and a videotape that documents the period after the incident when plaintiff was held on the floor and then examined by medical staff (#67, Ex. F, G, I).

Plaintiff offers his affidavit as evidence in support of his version of events (#71, pp. 24-40). Plaintiff claims that as he was being led to the shower in full restraints, he told Garchow that

he was holding plaintiff's arm too tightly.[2] *Id*. Plaintiff contends that he made no threatening physical gestures, but that Garchow slammed him to the ground and landed on top of him. *Id*. Plaintiff asserts that though he offered no resistance Garchow repeatedly slammed his head into the ground and then punched him in the head once with a closed fist. *Id*. Plaintiff provides the affidavits of two inmates who state that they witnessed the event (#71, pp. 38-39). Inmate Paliotta attests to a similar version of events as plaintiff recounts; inmate Ochoa adds that he observed the other two officers kick plaintiff in the back three or four times.[3] *Id*.

The court finds that a genuine issue of material fact exists as to whether Garchow used excessive force against plaintiff. Plaintiff acknowledges that he and Garchow do not get along and have had ten or fifteen "incidents" involving assault or threats in 2004-2005 (#80, plaintiff's deposition, pt. 2 at 39). However, plaintiff asserts that many of those incidents involve false write-ups by Garchow. *Id*. Plaintiff and Garchow's version of the events in question clearly differ, and both sides provide evidence in the form of supporting affidavits. Defendants characterize plaintiff's injuries as *de minimus*; however, the court notes that the video was filmed from too far away for a clear view of plaintiff's injuries and that, in any event, the extent of his injuries is not dispositive. Accordingly, defendants' motion for summary judgment as to plaintiff's claim that excessive force was used is denied.

---

[2]Plaintiff claims that Garchow was holding his bicep too tightly as a form of sexual harassment (*See, e.g.*, #71, plaintiff's affidavit at 28; #67, Ex. N at 30).

[3]These allegations resemble plaintiff's version of events in his amended complaint, in which he claims that "between [Garchow] and the officers that were with him begin to hit and jump on plaintiff's back" (#8). Plaintiff does not mention any acts of force by the other two officers in his several oppositions to summary judgment or in his deposition (*See* #s 71, 75, 80, 67, Ex. N).

**2. Retaliation**

Defendants argue that plaintiff's cell was searched pursuant to the institutional procedure that requires random cell searches on a regular basis (#67, Ex. O, submitted under seal). Defendants provide search logs that indicate that plaintiff's cell was randomly searched in the past and currently. *Id.*, Ex. P. Defendants assert that the "legal documents" that plaintiff claims were destroyed were in fact grievances belonging to other inmates that constituted contraband because plaintiff obtained the grievances in violation of ESP regulations (#67). Defendants contend that the fact that plaintiff continues to file numerous grievances demonstrates that the searches have not chilled his exercise of his First Amendment rights. *Id.*

Plaintiff argues that defendants' claim that the searches were mandated by institutional procedures is pretextual and that plaintiff was targeted for cell searches in retaliation for stating at his disciplinary hearing that the guards have a policy of using excessive force against restrained inmates (#71, plaintiff's affidavit at 30).

Defendants submitted numerous copies from the cell shake-down log that show that plaintiff's cell was routinely searched between 2003 and 2005 (#71, Ex. P). Plaintiff stated in his deposition that the "legal documents" he claims that defendants destroyed were other inmate's grievances that he intended to use in his litigation (#67, Ex. N at 22). Plaintiff admits that he obtained the grievances in violation of ESP regulations by passing a string under another inmate's cell door, a technique known as the "Cadillac." *Id.* at 28-31. However, plaintiff claims that he is not prohibited from possessing copies of other inmate's grievances generally, *id.*, which defendants do not address.

Defendants do not provide any documentation regarding the searches in which the damaged light or razor blade were allegedly discovered. On May 29, 2004, plaintiff submitted

a grievance in which he complained that after his disciplinary hearing regarding the incident with Garchow, defendants searched his cell in retaliation and filed a false disciplinary report stating that plaintiff had cut the plexiglass on his cell light (#71, Ex. E). The response states: "The physical evidence includes scratches on your cell light cover and deep cuts in the floor of your cell. You have lived in Cell 4B 15A since 6-16-03 and have been the sole inhabitant. You did not report any damage to the light cover or the floor. This is sufficient evidence to find you guilty of all charges." *Id*., Ex. F. Plaintiff submitted a grievance on June 17, 2004, which stated that he felt he was being harassed during cell searches, expressed concern that prison guards would plant a weapon or drugs in his cell, and requested that searches of his cell be videotaped. *Id*., Ex. G. On July 14, 2004, plaintiff stated in a grievance that on June 29, 2004, defendants Romero and Oxborrow and another correctional officer destroyed plaintiff's "legal documents" – other inmates' grievances – and filed a false report claiming that they found a razor blade in plaintiff's cell. *Id*., Ex. H. While defendants argue that plaintiff obtained the grievances improperly, they do not address the razor blade in their motion (*See* #67).

The court views plaintiff's retaliation claim as setting forth three issues: 1) whether plaintiff was subjected to retaliatory cell searches in general; 2) whether defendants filed a false disciplinary report regarding the damaged cell light; and 3) whether during the June 29 search, defendants improperly destroyed the other inmates' grievances and filed a false disciplinary report regarding the razor blade. The court finds that defendants have demonstrated that correctional officers must conduct routine, random cell searches in accordance with ESP policy (#67, Ex. O, submitted under seal). Thus, plaintiff has failed to meet his burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory cell searches. *Pratt*, 65 F.3d at 806. Because deference must be accorded to prison officials when evaluating such claims, *id*.

at 807, the court also finds that no genuine issue of material fact exists with respect to whether defendants filed a false disciplinary report regarding the damaged cell light. The grievance response states that the cell light and floor were damaged, that plaintiff was the sole inhabitant of the cell since 2003, and that plaintiff had not reported any damage (#71, Ex. F). In response, plaintiff fails to set forth specific facts to show that a genuine factual issue exists (*See* #71, 75, 80; *Anderson,* 477 U.S. at 248).

As to the third issue, defendants offer no argument regarding plaintiff's allegations that a razor blade was planted in his cell (*See* #67). Also, while plaintiff acknowledged that he obtained the grievances improperly, defendants do not explain whether plaintiff was allowed to possess the grievances. Accordingly, defendants' motion for summary judgment is granted as to whether plaintiff was subjected to retaliatory searches generally and as to whether a false disciplinary report was filed regarding the damaged cell light. Defendants' motion for summary judgment is denied as to plaintiff's claim that during the June 29 search, his papers were improperly destroyed and a razor blade was planted in his cell.

**3. Due process**

Defendants argue that plaintiff does not have a liberty interest in the disciplinary proceedings, *Sandin v. Conner*, 515 U.S. 472, 484 (1995); but they also contend that even if process was due, plaintiff was given an opportunity to present evidence and make statements in his defense (#67, Ex. L, M). Plaintiff argues that defendants Neagle and Falge violated his due process rights by finding him guilty of disciplinary violations without any evidence (#71). Plaintiff also contends that he was not allowed to present evidence with respect to the notice of charges for the damaged cell light. *Id*.

Defendants provide the summary of the May 21, 2004, disciplinary hearing arising from the incident with Garchow, which indicates that plaintiff was found guilty of two of four charges (#67, Ex. L). The summary states that plaintiff made a statement, that plaintiff's request to call inmate Ochoa to make a statement was denied based on redundancy, and that the hearing officer, apparently defendant Falge, based his determination of guilt on the notice of charges and plaintiff's history of violence. *Id.*

The summary for the May 29, 2004, disciplinary hearing reflects that plaintiff was present, that he made a statement, and that defendant Neagle's determination of guilt was based on defendant Romero's written report stating that plaintiff's cell light cover had been cut (#67, Ex. M). A third disciplinary hearing apparently took place, presumably arising from the notice of charges for the search in which the razor blade was allegedly discovered. Defendants do not provide a summary, and it appears that plaintiff refused to attend that proceeding (#80, plaintiff's deposition, pt.1 at 27; #71, plaintiff's affidavit at 32-33).[4]

The court finds that the disciplinary proceedings satisfied plaintiff's due process rights under *Wolff*. 418 U.S. at 563-70. Plaintiff does not dispute that he received the notice of charges before each disciplinary hearing (#71).[5] Plaintiff was allowed to make statements on his own behalf at the hearings (#67, Ex. L, M). Defendant Fagle denied plaintiff's request to have inmate Ochoa testify at the disciplinary hearing regarding the Garchow incident due to redundancy, a

---

[4]Plaintiff states in his deposition that he did not attend the disciplinary hearing for the charges relating to the damaged cell light (#80, plaintiff's deposition, pt. 1 at 27). However, it appears plaintiff misspoke and meant to say that he did not attend the disciplinary hearing regarding the razor blade allegation (*See* #71, plaintiff's affidavit at 32-33).

[5]Again, there is a discrepancy between plaintiff's deposition and affidavit (*See* #80, plaintiff's deposition, pt. 1 at 27; #71, plaintiff's affidavit at 32-33). However, plaintiff alleges that defendants filed false disciplinary reports and he appears to have had knowledge of all charges.

conclusion born out by Ochoa's affidavit in this litigation. *Id.*; #71, Ex. I. Plaintiff complains that he was not allowed to present evidence at the hearing regarding the damaged cell light and presents the emergency grievance he filed on May 27, 2004, asking for photos to be taken of his cell light (#71, Ex. D). The grievance was denied as a non-emergency, *id.*, yet plaintiff filed another emergency grievance on May 28, 2004, which also was denied as improper (#71, Ex. D1). Plaintiff did not have photos to present at this hearing; however, some evidence, in the form of Romero's written report, supports the decision of the disciplinary board (#67, Ex. M; *Hill*, 472 U.S. at 455). Plaintiff acknowledged in his deposition that his due process claims amount to dissatisfaction with the outcome of disciplinary proceedings (#80, plaintiff's deposition, pt. 1 at 24). Accordingly, defendants' motion for summary judgment is granted as to plaintiff's due process claims.

## III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants have demonstrated the absence of an issue of material fact as to plaintiff's due process claim, his claim that NDOC has a policy authorizing excessive force, and his claim that he was subjected to retaliatory cell searches and subjected to a retaliatory, false disciplinary report regarding the damaged cell light. However, defendants have failed to demonstrate the absence of an issue of material fact as to plaintiff's claim that he was subjected to excessive force and his claim that defendants planted a razor blade in his cell. As such, the court recommends that defendants' motion for summary judgment (#67) be granted in part and denied in part.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days

of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**III. RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#67) be **GRANTED in part** as to count I, plaintiff's claim that NDOC policy authorizes excessive force against inmates, and **DENIED in part** as to count I, plaintiff's claim that Garchow used excessive force against plaintiff.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (#67) be **GRANTED** as to count II**.**

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (#67) be **GRANTED in part** as to count III, with respect to plaintiff's claims that he was subjected to retaliatory cell searches generally and subjected to false disciplinary charges in connection with the damaged cell light, and **DENIED in part** as to count III, with respect to plaintiff's claim that a razor blade was planted in his cell.

**DATED:** August 15, 2006

Valerie P. Cooke

**UNITED STATES MAGISTRATE JUDGE**